The Chief Justice

delivered the Opinion of the Court.
This is a writ of right, in which Rachel Shackleford, the demandant, having failed in the Circuit Court, now insists here, that the Circuit Judge erred in admitting, as evidence against her on the trial of the mise, a conveyance to James Barnet, executed in 1811, by Bennet C. Shackleford, her husband, since dead, and certified as having been acknowledged, also, by herself, upon privy examination, for the tract of land claimed in her count; the inchoate title to which had been devised to her by her father, Samuel Bell, who died in 1783, and for which a grant had been issued to herself, from this Commonwealth, in 1808.
Her counsel has argued that the certificate of her acknowledgment is not substantially such as is prescribed by statute, and is not, therefore, sufficient to divest her of her title.
But the question thus raised, will not be considered; *274 because, even if the Circuit Court decided erroneously as to the validity and effectiveness of the certificate of her acknowledgment, nevertheless that error should not be deemed to have been prejudicial to her; for, had the Circuit Judge excluded the deed of 1811, still there was, in our opinion, another and prior conveyance which alone should operate conclusively against her, and in favor of the tenants who hold under James Barnet.
In 1783, the will of Samuel Bell was proved and admitted to record, and James Barnet and William Patton were appointed administrators, cum testamento annexo. In 1788, Patton was appointed guardian of the demandant, then about six years old; and about the year 1786, Barnet had settled on the land now in controversy, claiming to hold it as administrator with the will annexed. But in February, 1795, upon the application of Barnet, sanctioned by the guardian and co-administrator, the Court of Quarter Sessions for Madison county, in which the land is situate, appointed three “guardians” or commissioners “to lay off and convey to the said James Bar-“net, two tracts or parcels of land, as per the bonds giv“en by Samuel Bell to Alexander Patton and Richard “Walker, agreeable to an act of the General Assembly, “in such case made and provided.” And in April of the same year, the same Court approved and ordered to record, a conveyance from the said commissioners to the said Barnet, reciting a consideration of three hundred pounds, and conveying to him, by defined boundaries, the land demanded in this suit, and described in their deed, as ‘containing three hundred acres, which said Bell, deceased, acknowledged bonds for, in his lifetime.”
It appears probable, from the testimony, that Barnet had, for some years prior to 1795, claimed the land as his own, perhaps as assignee of the bonds described in the conveyance by the commissioners. It appears, also, that he continued to reside on it until since 1812, when he gave it to the tenants, his daughter and her husband, who have resided on it ever since; that it has been held and claimed and expensively improved as the property of Barnet and of the tenants, and especially, ever since the year 1795, with the knowledge and apparent acquiescence *275 of the demandant, who attained twenty one years of age about the year 1803, lived in the neighborhood of the land, and was not married until 1810. And that a patent for it was procured, in 1808, at Barnet’s instance, and was delivered to him, and retained by him, as a document of title, with her knowledge and presumed consent.
The act of assembly under the authority of which the court of Quarter Sessions intended to proceed in making the foregoing orders, of 1795, was enacted in 1793. (1 Littell’s Laws, 180.)
“ An ACT to appoint Commissioners for the conveyance of Land in certain cases.
Approved, December 10, 1793.
Whereas, an act passed, at the last session of the general assembly, entitled “an act to appoint commissioners for the conveyance of certain lands,” is defective, and provides no remedy for many inconveniences of a similar nature to that intended to be remedied by the said act.
Sec. 1. Be it enacted by the General Assembly, That where any person has died, or shall hereafter die, intestate, leaving his heirs, or any of them, infants ; or having made a will, shall not, in such will, have authorized his executors, or some other person, to make deeds of conveyance, in performance of his contracts, and having previous to his death, executed bonds or any instrument of writing, binding him to convey any tract or parcel of land; that in such case it shall be lawful for the administrators or executors of such person, as the case may be, to apply to the court of quarter sessions, or any superior court of original jurisdiction that may be established, to appoint three fit persons, guardians of such infant or infants, who shall have full power and authority to convey any tract or parcel of land to the person entitled to the same, which the decedent bound himself and his heirs in any instrument of writing to convey, agreeable to the the tenor of such instrument: And such conveyance so made, shall be as valid and binding upon the heirs, as if made by their ancestor in his life time: Provided however, That nothing in this act shall be so construed, as to prevent the infant representatives of such decedent, from instituting suits to recover such land or a compensation in damages from the person or persons to whom it shall be conveyed, if any fraud shall have been practised in obtaining the same.
Sec. 2. This act shall commence and be in force from and after the passage thereof.”
*276 Samuel Bell’s will did not nominate any executor; nor did it authorize or direct any person to make any conveyance of land for which he had given a covenant during his life-time. If then the bonds recited in the order of Court, and conveyance by the commissioners, were genuine, and James Barnet was the beneficial holder of them, the Court of Quarter Sessions of Madison had jurisdiction, under the act of 1793, to complete a specific execution through the instrumentality of commissioners appointed for that purpose. The fact that the testator’s title was imperfect, was not, in our judgment, material so far as the authority of the Court was concerned; for the object of the act of 1793 was to provide a mode for transferring by deed all the vendor’s title, whatever it might be; and Samuel Bell’s title was legal, though not perfect.
The bonds, however, as recited in the conveyance, have not been exhibited or identified, either in the record of the proceedings of the court of Quarter Sessions, or in the record of this suit. Nor has it been expressly shown, either that James Barnet was entitled, by assignment or otherwise, to the benefit of those obligations, or that they applied to the land which was conveyed to him by the commissioners,
But the order appointing the commissioners, and that which recognized and approved their conveyance, with all its recitals, conduce to the presumption that such bonds as those described were before the court of Quarter Sessions; that Barnet was entitled to the benefit of them, and that they contained covenants for the conveyance of the land which was conveyed by the commissioners, and as conveyed by them. And, though the order appointing the commissioners does not show that, the administrators with the will annexed had made the application, yet it shows that Barnet, who was one of the administrators, had made it; and a letter to the Court of Quarter Sessions from Patton, the other administrator and the guardian, giving his sanction to the procedure, has been exhibited as evidence in this case, and is, as we think, admissible for the purpose of fortifying the presumption that the application was virtually made by the *277 administrators with the will annexed, and also to show that the guardian concurred.
Now, although the record of the Court of Quarter Sessions does not expressly exhibit all the facts which might be deemed necessary to give it jurisdiction, and to show that it had acted regulariy and properly: yet, as that which does appear and that which may be implied, do not show a want of legal authority to act, but rather the contrary, we should—especially after so long a lapse of time—presume that the Court had legal authority in the case, and that it acted rightly. If the Court had jurisdiction, no irregularity in its proceedings could render its acts void, or even questionable collaterally, in this suit. And we think that, after the lapse of forty three years from the date of the conveyance to the institution of the suit, and an apparent acquiescence during the entire interval, the law, as well as reason, policy and justice, will authorize and require the presumption that every thing was rightly done which the record of the proceeding in the court of Quarter Sessions does not show to have been done without authority.
We are, therefore, clearly of the opinion, that the conveyance of 1795 should be deemed valid; and containing, as it does, a general warranty, it operated as an estoppel, and vested in Barnet the perfect legal title when the patent emanated.
The conclusion to which we have thus come, being, as we think, a clear deduction of law, which should have been conclusive on the trial, the tenants had a right, on this ground alone, to recover, and the jury had no legal right to find otherwise than they did. A judgment against the demandant on such a verdict should not, therefore be reversed, even if the deed of 1811 had been improperly admitted as evidence.
Whether this latter conveyance was so certified as to be effectual against the demandant, or whether, without the aid of either that deed, or the prior one of 1795, there was such an adverse possession as should alone bar this suit, or would show that the demandant was never actually seized within thirty years, are all questions which it is, of course, unnecessary now to discuss or consider.
December 10.
The conveyance of 1795, being, in our judgment, valid and conclusive, the, judgment of the Circuit Court is, therefore, affirmed,